IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUOEY LUNG ENTERPRISE CORP., <br><br>　　Plaintiff, <br><br>v. <br><br>TEMPUR-PEDIC, INTERNATIONAL INC.; TEMPUR-PEDIC SALES, INC.; TEMPUR-PEDIC NORTH AMERICA LLC; OPTIMA HEALTHCARE, INC.; and APEX HEALTH CARE MANUFACTURING, INC., <br><br>　　Defendants. | **Civil Action No. 09-CV-11550-GAO** |
| ASCION, LLC and <br> MARTIN RAWLS-MEEHAN <br><br>　　Plaintiffs, <br><br>v. <br><br>RUOEY LUNG ENTERPRISE CORP. and LUNG-TAN SHIH <br><br>　　Defendants. | Civil Action No. 09-CV-10293-WGY <br> Consolidated with the above action |

**ASCION'S OPPOSITION TO RUOEY LUNG'S
MOTION TO COMPEL FURTHER INSPECTION
OF SAMPLES AND FURTHER PRODUCTION OF DOCUMENTS**

Defendant Ruoey Lung Enterprise Corp.'s and Lung-Tan Shih's (collectively, "Ruoey Lung") motion to compel is an exercise in futility. First, Ruoey Lung's request for production of additional versions of the accused beds is wasteful and unnecessarily duplicative of discovery already taken. Ruoey Lung seeks to force Ascion to produce physical specimens of so-called "two arm" versions of the accused beds when Ruoey Lung admits that it already possesses a two

arm bed.  Ruoey Lung provides no explanation as to why it would need another sample of a bed it already has.  Even if Ruoey Lung did not have this sample, there is no reason for the expensive and unduly burdensome additional production of these beds: Ascion readily admits (as shown in the documents highlighted by Ruoey Lung in its motion to compel) that Ascion sold versions of the accused beds with "two arms."  It would be much simpler and more efficient for Ruoey Lung to seek the particular discovery it needs – i.e., admissions that Ascion sold "two arm" beds – through the documents it already has, a deposition, interrogatories, or even a request for admission.

Second, Ruoey Lung's request for additional documents is moot as Ascion has already agreed to produce and has produced additional documents.  Ruoey Lung ignored this agreement, however, Ruoey Lung brought its motion before fulfilling its L.R. 7.1 and 37.1 meet-and-confer obligations with Ascion.  Before Ruoey Lung brought its motion, Ascion agreed to produce additional documents, though Ascion simply requested Ruoey Lung precisely define the documents it was requesting.  Ruoey Lung apparently attempted to do so in an email late one Friday afternoon to Ascion, but instead of awaiting Ascion's response, Ruoey Lung violated L.R. 7.1 and 37.1 filed its motion to compel.  Regardless of Ruoey Lung's violation of these rules, Ascion has already agreed to supplement its production, has done so by making two additional productions already.  This portion of Ruoey Lung's motion requesting additional documents, therefore, is moot.

For the above reasons, set forth more fully below, Ascion requests that the Court deny Ruoey Lung's motion to compel further inspection of samples and further production of documents.

## BACKGROUND

### A.  Two "First Link" Versus Single "First Link" Adjustable Beds.

Ruoey Lung and Ascion are involved in this litigation due to Ruoey Lung's allegations that Ascion manufactures, distributes and/or sells beds that infringe U.S. Patent No. 7,448,100 (the "'100 patent"). One key element of every claim of the '100 patent is that there are "two first links" on the beds.

In the '100 patent, these "two first links" are described as being attached to the head portion of the adjustable frame, as shown as in the figure below in orange, labeled "12":



As shown in the additional '100 patent figure below, there are "**two** first links" as required by the claims, one on each side of the frame, again labeled as "12":



### B.     Ruoey Lung's Inspection of the Accused Beds and Ascion's Production.

Ruoey Lung specifically accuses three Ascion models of beds of infringing the '100 patent: (1) Ergo System Full Motion Bed, (2) Reverie Deluxe Adjustable Bed, and (3) Reverie Comfort Adjustable Bed.[1]  In its initial document requests, Ruoey Lung requested a wide array of documents, primarily documents related to the accused beds.  In response, Ascion produced to Ruoey Lung over 35 gigabytes of data (over 90,000 "documents," including scanned paper documents) responsive to Ruoey Lung's requests.

Ruoey Lung also requested that Ascion produce multiple samples of every version of the accused beds:

> Request for Production No. 2: Three samples of every [accused bed].  If there are different versions of a particular [accused bed], produce three samples of each different version.[2]

---

[1] Ruoey Lung's Resp. and Obj. to Ascion's Interr. (dated January 20, 2010) at 8 (attached to the Declaration of John L. Strand, Esq. dated September 10, 2010 ("Strand Decl.") (filed with this opposition) as Exhibit A).

[2] Ex. H to the Declaration of Richard Cauley (D.I. 101-10) ("Cauley Decl.") at 5.

Needless to say, Ascion objected to actually producing multiple samples of its beds, each worth hundreds or thousands of dollars depending on its size and difficult to transport, and indicated in its response that Ascion was "willing to confer to narrow the scope of this request."[3] The parties met and conferred and eventually the parties reached an agreement resolving the issue, whereby Ascion would produce one sample of each bed for visual inspection:

> Ascion will make available for visual, non-destructive inspection at its Silver Creek, New York facility one sample of each of the accused beds: Ergo System Full Motion Bed, Reverie Deluxe Adjustable Bed, and Reverie Comfort Adjustable Bed.[4]

Ascion did so. As agreed, Ruoey Lung's inspection took place on July 23, 2010 in Silver Creek, New York.

### C. Ruoey Lung's Accusations Concerning Ascion's Production.

Almost two weeks after the inspection, Ruoey Lung wrote to Ascion about the inspection.[5] In that letter, Ruoey Lung admitted that the '100 patent requires there be **two** "first links": "As you know, an element of the '100 patent is that the bed have '2 first links.'"[6] Then, Ruoey Lung accused Ascion of tampering with the inspected accused beds because "one of the 'first links' was removed…,"[7] precluding any infringement of the '100 patent. Indeed, Ruoey Lung acknowledged that "one arm" beds so clearly do not infringe, that it characterized the inspection of the accused "one arm" beds ("single first link" beds) that Ascion now sells as a

---

[3] *Id.*
[4] Cauley Decl. Ex. C at 1.
[5] Cauley Decl. Ex. D at 1
[6] *Id.* at 20.
[7] *Id.*

"wasted trip."[8] In an abrupt reversal, however, Ruoey Lung now alleges in updated interrogatory answers that a "single first link" is equivalent to "two first links."[9]

Immediately after receiving the letter from Ruoey Lung complaining of the inspection, Ascion responded to Ruoey Lung, denying any allegations of "tampering."[10] No such tampering took place:

> No one "tampered" with the beds for purposes of the inspection – I set up the accused beds precisely as they are currently manufactured and distributed to retailers and distributors. In particular, no one removed a so-called "stabilizer arm" from the beds that were inspected by Ruoey Lung's counsel.[11]

Moreover, despite Ruoey Lung's apparent disinclination to propound an interrogatory on the issue or seek a deposition, Ascion repeatedly stated that the beds Ascion currently manufactures and distributes have only one "first link":

> The beds that were produced to you for inspection are the beds that Ascion sells. They have not been altered for purposes of production to you. Ascion sells the accused adjustable beds with a single stabilizer arm. Ascion accordingly produced the accused beds as it supplies them in the marketplace.[12]

After receiving Ascion's letter, a series of emails and telephone calls transpired where Ruoey Lung continued to demand (1) production of accused beds with "two first links," (despite

---

[8] D.I. 101 at 14; see Declaration of Martin Rawls-Meehan dated September 10, 2010 ("Rawls-Meehan Decl.") (filed with this opposition) at ¶ 3 ("Currently, Ascion only sells or distributes accused beds that have a single 'stabilizer arm.'").

[9] Ruoey Lung's Supp. Resp. and Obj. to Ascion's Interr. Nos. 3 & 5 (dated Sept. 7, 2010) at 4-5 (attached to the Strand Decl. as Exhibit B). Ruoey Lung's bizarre contention that "one link" equals "two" will be addressed in due course.

[10] Cauley Decl. Ex. E at 1.

[11] Declaration of John Eppolitio dated Sept. 10, 2010 (filed with this opposition) at ¶ 4.

[12] Cauley Decl. Ex. E at 1. As noted above, Ascion currently only sells beds with a single stabilizer arm and has done so since April 2009. (Rawls-Meehan Decl. at ¶ 3.) Although a small number of the older beds are apparently still in inventory, they are not for sale in that form, and in any event, as noted above, Ruoey Lung already has access to one. Additionally, Ascion has provided engineering design drawings showing the design of these beds in detail, and has produced financial documents showing how many of each type of bed Ascion has sold. It is difficult to understand what more Ruoey Lung could reasonably want.

the parties' agreement that Ascion would only produce "one sample" of each accused bed), (2) "all financial documents," and (3) "all design documents" (beyond those produced in Ascion's initial production of over 90,000 documents).

In response to Ruoey Lung's demands, Ascion reiterated that it complied with the agreement and would not make any further production of samples of accused beds. As to the financial and design documents, however, Ascion agreed to produce additional documents, but sought clarity from Ruoey Lung as to precisely what documents it was looking for: "I believe we are basically in agreement as to the additional documents Ascion must produce, but we want to have the agreement precisely defined."[13] Ruoey Lung responded at 4:44pm Eastern time on a Friday by merely reiterating its document requests to Ascion,[14] failed to wait for any additional response from Ascion, and then filed its motion five hours later at 9:36pm that same Friday – all despite Ascion's counsel's statement that "I believe we are basically in agreement as to the additional documents Ascion must produce… ."[15]

On August 26, 2010, Ascion produced its "Engineering Change Notices"[16] that showed the precise changes, with drawings, Ascion made to the accused beds by removing one of the stabilizer arms. It also produced an Ascion catalog dated October 2009 showing the "one arm" bed currently distributed by Ascion.[17] Finally, on September 10, 2010, Ascion produced detailed financial documents detailing – on an invoice-by-invoice level – Ascion's precise revenue, costs,

---

[13] Cauley Decl. Ex. T at 1.

[14] Cauley Decl. Ex. U at 1. Note the email says it was sent at 1:44pm *Pacific* time, which would be 4:44pm Eastern time.

[15] Cauley Decl. Ex. T at 1.

[16] Strand Decl. at ¶ 4.

[17] Ex. C to the Strand Decl.

and profit related to the accused beds.[18] Despite these productions, Ruoey Lung has refused to withdraw its motion to compel.[19]

## ARGUMENT

### I. THERE IS NO REASON RUOEY LUNG NEEDS TO INSPECT ADDITIONAL "TWO ARM" BEDS.

Ruoey Lung admits that *it is already in possession of a "two arm" accused bed*:

> Prior to bringing the present action, RL purchased a Tempur-pedic 25555150 Ergo System Power Base Queen 60X80 from Ergo Customized Comfort in Irvine, California on or around May 1, 2009. That bed had two "stabilizer" arms, as indicated in the photograph attached hereto as Exhibit A.[20]

Accordingly, there is no reason Ascion should be forced to produce a sample of a bed that Ruoey Lung already possesses. Such a production is unduly burdensome and duplicative.

Moreover, Ruoey Lung knew before its July 23 inspection that Ascion was only going to produce one sample of each accused bed as they are currently sold. Ruoey Lung argues that Ascion "did not – *as required* – produce samples of 'all versions' of its adjustable beds… ."[21] Ascion, however, was under no such "requirement." During the meet-and-confer process the parties agreed Ascion would produce for inspection ***"one sample of each of the accused beds."***[22] Ruoey Lung voiced no objection to Ascion producing "one sample of each of the accused beds" before it incurred its expenses attending the inspection. Ruoey Lung cannot now be heard to complain after the fact because it "wasted" its time inspecting beds as Ascion currently sells them.

---

[18] Strand Decl. at ¶
[19] Strand Decl. at ¶ 7 and Ex. D.
[20] Declaration of Franklin E. Gibbs (D.I. 101-1) at ¶ 2.
[21] D.I. 101 at 2.
[22] Cauley Decl. Ex. C. at 1.

Finally, Ruoey Lung's requested relief is unreasonable. Ruoey Lung somehow claims that the "most efficient solution"[23] to its discovery complaint is to force Ascion to (1) locate and purchase, at several hundred to over a thousand dollars a piece, "a sample of each and every different version of each and every accused bed" (apparently even if the differences in the versions have nothing to do with Ruoey Lung's infringement analysis, or Ascion's non-infringement defense), and (2) ship those beds at expected great expense to Ruoey Lung's counsel's offices in Newport Beach, California.[24] If Ruoey Lung genuinely needs to learn what is different between the beds produced on July 23, 2010 and any earlier versions of the accused beds, it can review the "Engineering Change Notices" produced by Ascion showing the precise changes made by Ascion. Or Ruoey Lung could question appropriate witnesses at their depositions, which Ruoey Lung never even sought to take until yesterday. Such a deposition, or an interrogatory or a request for admission, would be more efficient and less burdensome than Ruoey Lung's proposed drawn-out, expensive production process. In addition, such discovery would ultimately lead to the same result – the undisputed fact that, for a period of time until the beginning of April 2009, Ascion sold or distributed accused beds with two "stabilizer arms." No costly and inefficient inspection is necessary to get to this end point – Ruoey Lung's proposed remedy is unduly burdensome for all parties involved.

## II. ASCION WILL PRODUCE ADDITIONAL "FINANCIAL" DOCUMENTS AND "DESIGN" DOCUMENTS.

Ruoey Lung's motion with regard to Ascion's further production of "financial" and "design" documents is similarly futile and a waste of both the parties' and the Court's resources: Ascion has already agreed to produce additional documents (and has already started this

---

[23] D.I. 101 at 9.

production), so no motion or order is necessary.[24] After receiving Ascion's agreement to produce additional documents, Ruoey Lung chose not to continue the meet-and-confer process. Instead, after receiving notice from Ascion that "we are basically in agreement as to the additional documents Ascion must produce, but we want to have the agreement precisely defined,"[26] Ruoey Lung filed its motion to compel.

### A. Ascion Has Already Agreed to Produce and Has Produced Additional "Financial" Documents.

First, Ruoey Lung cannot credibly claim – as it did in its correspondence prior to filing its motion – that Ruoey Lung is entitled to "all financial documents" or Ascion's "full financials."[27] That blatantly overbroad request is why Ascion requested the parties continue to confer to "have the agreement [to produce] precisely defined."[28] Indeed, Ruoey Lung has backed off from its broad initial requests and is now merely requesting in its motion that Ascion's relevant financials "break out sales of the accused products with one arm and those with two arms."[29]

Today, Ascion produced that precise financial information in the form of a report run from Ascion's electronic accounting system: For each accused product, Ascion produced invoice level data from November 2008 (the issue date of the '100 patent) through August 2010: the quantity of accused products distributed/sold by Ascion; the quantity of accused products returned (if any); Ascion's gross revenue for each product; Ascion's net revenue for each product; Ascion's cost of goods sold for each product; and a break-out of this data by "one arm"

---

[24] Where Ruoey Lung's counsel intends to store or receive "each and every different version of each and every accused bed" at its offices is unclear.

[25] Cauley Decl. Ex. R. at 1.

[26] Cauley Decl. Ex. T. at 1.

[27] Cauley Decl. Ex. S. at 1.

[28] Cauley Decl. Ex. T at 1.

[29] D.I. 101 at 12.

versus "two arm" beds.[30] Despite the overbreadth of Ruoey Lung's requests, and Ascion's objections to Ruoey Lung's requests, the financial information Ascion produced tracks almost precisely with Ruoey Lung's document request number 39, and includes a break-out between "one arm" and "two arm" beds.[31] Any additional information produced by Ascion would simply be unnecessarily duplicative and unduly burdensome.

### B. Ascion will Complete Its Production of "Design" Documents.

Ascion has already produced extensive documents showing the designs of its adjustable beds (including the prior two arm versions) and the process by which these designs were arrived at. Ascion will supplement its production with documents from after February 2009 concerning changes to the designs of the frame mechanics of its accused beds, in particular the change from "two first links" to "one first link." This production will complete Ascion's production with regard to the design of Ascion's beds and satisfy Ruoey Lung's request that Ascion produce "documents relating to 'design changes' including (but not limited to) 'work-arounds' to avoid patent infringement."[32]

### III. RUOEY LUNG IS NOT ENTITLED TO COMPENSATION FOR THE INSPECTION THAT IT AGREED TO ATTEND.

After requesting that that the Court order Ascion to produce samples of beds from around the country just to prove something that Ascion will readily admit, and requesting the Court order Ascion to produce documents its already agreed to produce and has produced, Ruoey Lung then requests that the Court order Ascion to pay Ruoey Lung $4,669.35 for the "wasted trip" its counsel made to inspect the accused beds that Ascion currently sells.[33] Ruoey Lung complains

---

[30] Strand Decl. at ¶ 6.
[31] Cauley Ex. H at 25.
[32] D.I. 101 at 10.
[33] D.I. 101 at 14.

because the inspection was allegedly of a "unrepresentatively narrow subset of bed samples,"[34] presumably because Ruoey Lung recognizes the accused beds as Ascion currently distributes them do not infringe (despite Ruoey Lung's recent updated interrogatory responses to the contrary).[35] Ascion, however, expressly told Ruoey Lung that it was producing "one sample of each of the accused beds."[36] Ascion did precisely that. Ruoey Lung cannot now complain that the inspection was incomplete because it had full knowledge that Ascion was only going to produce "one sample of each of the accused beds." If Ruoey Lung wanted Ascion to go to the open market to purchase and then produce additional samples before expending $4,669.35 in fees and costs, it should have raised the issue during the meet-and-confer process that led to the inspection of "one sample" of each of the accused beds.

## CONCLUSION

For the foregoing reasons, Ascion requests that the Court deny Ruoey Lung's motion to compel (D.I. 101).

---

[34] D.I. 101 at 14.
[35] Strand Decl. Ex. B at 4-5.
[36] Cauley Decl. Ex. C. at 1

- 13 -

                                    Respectfully submitted,

Dated:  September 10, 2010        /s/ John L. Strand
                                    Allen S. Rugg (BBO # 674484)
                                    arugg@wolfgreenfield.com
                                    Michael A. Albert (BBO # 558566)
                                    malbert@wolfgreenfield.com
                                    John L. Strand (BBO # 654985)
                                    jstrand@wolfgreenfield.com
                                    Eric G. J. Kaviar (BBO # 670833)
                                    ekaviar@wolfgreenfield.com
                                    WOLF, GREENFIELD & SACKS, P.C.
                                    600 Atlantic Avenue
                                    Boston, Massachusetts 02210
                                    617.646.8000 phone
                                    617.646.8646 facsimile

                                    COUNSEL FOR ASCION, LLC and MR. MARTIN RAWLS-MEEHAN

## CERTIFICATE OF SERVICE

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                                   /s/ John L. Strand