IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUOEY LUNG ENTERPRISE CORP.,<br><br>        Plaintiff,<br><br>v.<br><br>TEMPUR-PEDIC, INTERNATIONAL INC.; TEMPUR-PEDIC SALES, INC.; TEMPUR-PEDIC NORTH AMERICA LLC; OPTIMA HEALTHCARE, INC.; and APEX HEALTH CARE MANUFACTURING, INC.,<br><br>        Defendants. | **Civil Action No. 09-CV-11550-GAO**<br><br>*Leave to File Granted on January 5, 2011* |
| ASCION, LLC and MARTIN RAWLS-MEEHAN,<br><br>        Plaintiffs,<br><br>v.<br><br>RUOEY LUNG ENTERPRISE CORP. and LUNG-TAN SHIH,<br><br>        Defendants. | Civil Action No. 09-CV-10293-GAO Consolidated with the above action |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Ascion, LLC and Martin Rawls-Meehan, for their amended complaint against Ruoey

Lung Enterprise Corp. and Lung-Tan Shih, allege as follows:

### THE PARTIES

1.      Plaintiff Ascion, LLC ("Ascion") is a limited liability company formed under the

laws of the state of Michigan and having a principal place of business at 86 Sherman St.,

Cambridge, MA 02140.

1

2.      Plaintiff Martin Rawls-Meehan is an individual residing at 9 Winthrop Road, Lexington, MA 02421.

3.      On information and belief, Defendant Ruoey Lung Enterprise Corporation ("Ruoey Lung") is a Taiwanese company having a principal place of business at 17 Lu-Kung South 2 Road, Chang-Pin Industrial Park, Lu-Kang, Changhua, Taiwan 505, ROC.

4.      On information and belief, Defendant Lung-Tan Shih is an individual residing at 17 Lu-Kung South 2 Road, Chang-Pin Industrial Park, Lu-Kang, Changhua, Taiwan 505, ROC.

## JURISDICTION AND VENUE

5.      This case involves federal questions and also involves claims between citizens having diversity of citizenship under 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, 2201, and 2202.

7.      This Court has personal jurisdiction over defendants, who on information and belief have significant contacts with and do business in this District, including the activities that form the basis for this action.

8.      Venue lies in this District pursuant to 28 U.S.C. §§ 1391 and 1400.

## COUNT ONE
### (CORRECTION OF INVENTORSHIP OF U.S. PATENT NO. 7,448,100 UNDER 35 U.S.C. § 256)

9.      Plaintiffs restate and incorporate by reference each of the averments of paragraphs 1-8.

10.     U.S. Patent No. 7,488,100 ("the '100 patent") was filed on June 21, 2006 and issued on November 11, 2008.  The '100 patent, on its face, names Defendant Lung-Tan Shih as

the sole inventor and identifies Defendant Ruoey Lung as the sole assignee.  A copy of the '100

patent is attached as Exhibit A.

11.     Martin Rawls-Meehan contributed to the invention claimed in the '100 patent.

12.     Martin Rawls-Meehan's name was improperly omitted as an inventor on the '100

patent.

13.     The omission of Martin Rawls Meehan as an inventor on the '100 patent arose

without deceptive intent on the part of Martin Rawls-Meehan.

14.     Pursuant to 35 U.S.C. § 256, the '100 patent should be corrected to name Martin

Rawls-Meehan as an inventor and as otherwise necessary to accurately reflect the inventorship of

the claimed subject matter.

## COUNT TWO
### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT)

15.     Plaintiffs restate and incorporate by reference each of the averments of paragraphs

1-14.

16.     Ruoey Lung claims to be the owner of the '100 patent and has alleged

infringement of that patent by Ascion.

17.     An actual controversy exists as to whether Ascion infringes the '100 patent.

18.     Pursuant to 28 U.S.C. § 2201 and 2202, Ascion is entitled to a declaration that it

is not infringing, has not infringed, and is not liable for any infringement of any valid claim of

the '100 patent.

## COUNT THREE
### (DECLARATORY JUDGMENT OF INVALIDITY)

19.     Plaintiffs restate and incorporate by reference each of the averments of paragraphs

1-18.

20.     Ruoey Lung claims to be the owner of the '100 patent and has alleged infringement of that patent by Ascion.

21.     An actual controversy exists as to whether the '100 patent is valid under 35 U.S.C. § 101, *et seq.*

22.     Pursuant to 28 U.S.C. § 2201 and 2202, Ascion is entitled to a declaration that the '100 patent is invalid under 35 U.S.C. §101 *et seq.*

## COUNT FOUR
### (INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS)

23.     Plaintiffs restate and incorporate by reference each of the averments of paragraphs 1-22.

24.     Ruoey Lung knew or should have known that plaintiffs have had actual and prospective business relationships with various businesses.

25.     Ruoey Lung intentionally and improperly interfered with plaintiffs' actual and prospective business relationships with such businesses by, among other things, sending threatening and defamatory letters to such businesses.

26.     Ruoey Lung's actions in interfering with plaintiffs' actual or prospective business relationships have been done in bad faith and without any basis of privilege.

27.     By their actions, Ruoey Lung has caused damage to plaintiffs in an amount to be proven at trial.

## COUNT FIVE
### (BREACH OF CONTRACT)

28.     Plaintiffs restate and incorporate by reference each of the averments of paragraphs 1-27.

29.     On or about November 22, 2005, Ascion, Ruoey Lung, Oko, and Lung Tang (collectively, "the Contracting Parties") entered into a contract relating to the sale of certain products.  That contract was memorialized in a document entitled "Commission Agreement," which was signed by a representative of each of the Contracting Parties.

30.     The Commission Agreement identified Ascion as the "Sales Entity" and identified Ruoey Lung, Oko, and Lung Tang, collectively, as "the Companies."  The Commission Agreement further set forth the rights and obligations of the Contracting Parties relating to the sale by the Sales Entity of products made by the Companies.

31.     Among other provisions, the Commission Agreement required, and continues to require, Ruoey Lung, Oko, and Lung Tang to indemnify Ascion and to hold Ascion harmless from any claims of patent infringement relating to the products sold by Ascion in connection with the Commission Agreement.

32.     The Commission Agreement constitutes a valid and enforceable contract between Ascion on the one hand and Ruoey Lung, Oko, and Lung Tang on the other.

33.     Over the last several years, Ascion has expended significant resources in defending against claims of patent infringement brought by L&P Property Management Company and Leggett & Platt Incorporated (collectively, "L&P") in a lawsuit now pending in this District, captioned L&P Property Management, et al. v. JTMD, LLC, et al, 07-cv-10207-RGS ("the L&P Litigation"), and continues to incur expenses in connection with that Litigation.

34.     Ruoey Lung, Oko, and Lung Tang were seasonably notified of L&P's claims of infringement and Ascion promptly requested that they comply with their obligation to indemnify Ascion and hold Ascion harmless from such claims.

35.     Ruoey Lung, Oko, and Lung Tang have failed to indemnify Ascion and hold Ascion harmless from the claims of infringement in the L&P Litigation.

36.     Ruoey Lung, Oko, and Lung Tang have therefore breached their contract with Ascion.

37.     Ascion has been damaged by the breach of contract by Ruoey Lung, Oko, and Lung Tang in an amount to be proven at trial.

## COUNT SIX

### (BREACH OF WARRANTY)

38.     Plaintiffs restate and incorporate by reference each of the averments of paragraphs 1-37.

39.     Pursuant to M.G.L. Chapter 106 (Uniform Commercial Code), Section 2-312, and other applicable, statutes, laws, and regulations, Ruoey Lung, Oko, and Lung Tang warranted that the goods delivered to Ascion would be free of the rightful claim of any third person by way of infringement.

40.     Over the last several years, Ascion has expended significant resources in defending against claims of patent infringement brought by L&P in the L&P Litigation, and continues to incur expenses in connection with that Litigation.

41.     Ruoey Lung, Oko, and Lung Tang were seasonably notified of L&P's claims of infringement and Ascion promptly requested that they comply with their obligation to indemnify Ascion and hold Ascion harmless from such claims.

42.     Ruoey Lung, Oko, and Lung Tang breached the warranty that the goods delivered to Ascion would be free of the rightful claim of any third person by way of infringement.

43.     Ascion has been damaged by the breach of warranty by Ruoey Lung, Oko, and Lung Tang in an amount to be proven at trial.

## COUNT 7
### (DECLARATORY JUDGMENT OF UNENFORCEABILITY)

44.     Plaintiffs restate and incorporate by reference each of the averments of paragraphs 1-43.

## Overview

45.     Lung-Tan Shih, the sole inventor identified on the face of the '100 patent, Ruoey Lung, the sole assignee identified on the face of the '100 patent, and Alan D. Kamrath, the attorney who prosecuted the application that issued as the '100 patent, withheld material prior art from the United States Patent and Trademark Office ("USPTO") with an intent to deceive the USPTO.

46.     Lung-Tan Shih, Ruoey Lung, and Kamrath were involved with prosecution of a co-pending patent application directed to an automatic bed similar to that of the '100 patent, but failed to make the USPTO aware of that co-pending application, an office action rejecting claims of the co-pending application, and prior art cited during prosecution of that co-pending application.

47.     The prior art cited during prosecution of the application that issued as the '309 patent is also prior art to the '100 patent.  That prior art alone or in combination with other prior art discloses the claimed invention of the '100 patent.

48.     During the prosecution of the application that issued as the '100 patent, Ruoey Lung sent an email to Plaintiff Mr. Rawls-Meehan attaching copies of two patents related to adjustable beds that were material prior art to the '100 patent.  Ruoey Lung withheld those prior art references from the USPTO.

**Duty of Disclosure**

49.     Inventors and all others associated with prosecution of a patent application owe a duty of good faith and candor to the USPTO.

50.     An obligation to disclose material information to the USPTO is included in the duty of good faith and candor.

51.     Material information includes material prior art.

52.     Prior art is material if it establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim.

53.     Information that a reasonable patent examiner would consider important in deciding whether to allow a patent to issue is material information.

54.     Kamrath prosecuted the '100 patent.

55.     As prosecuting attorney, Kamrath owed a duty of good faith and candor to the USPTO in prosecuting the application for the '100 patent.

56.     As an inventor, Lung-Tan Shih owed a duty of good faith and candor to the USPTO in prosecuting the application for the '100 patent.

57.     On June 13, 2006, Lung-Tan Shih signed a Declaration and Power of Attorney in which he acknowledged, under oath, his "duty to disclose information which is material to patentability [of the '100 application] as defined in 37 CFR 1.56."

58.     As the assignee of the '100 patent, Ruoey Lung owed a duty of good faith and candor to the USPTO in prosecuting the application for the '100 patent.

**Background on '100 Patent**

59.     The application underlying the '100 patent was filed with 20 original claims.

60.     In the first office action, dated April 17, 2008, the examiner rejected claims 1, 3, 6-11, and 18-20 as being anticipated by U.S. Patent No. 6,851,144 (the "'144 patent").

61.     In that first office action, the examiner stated that dependent claims 2, 4-5, and 12-17 would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

62.     Ruoey Lung amended the pending claims to overcome the '144 patent.

63.     Ruoey Lung added the limitations of pending dependent claims 3 and 4 to pending claim 1.  The resulting claims issued as claim 1.

64.     The examiner, therefore, considered only the following limitations, from pending dependent claims 3 and 4, to distinguish issued claim 1 of the '100 patent over the prior art ' 144 patent:

wherein the linking frame has a mediate portion provided with a support bracket;

the first support frame has a first portion pivotally mounted on the support bracket of the linking frame and a second portion provided with a resting bar rested on the cushion.

65.     The patent examiner would have considered prior art that disclosed the additional limitations of paragraph 64 above material to the prosecution of the '100 patent.

66.     The patent examiner would have considered prior art that discloses the additional limitations of paragraph 64 non-cumulative with respect to the prior art that was of record during the prosecution of the '100 patent.

67.     Ruoey Lung added the limitations of pending dependent claim 14 to pending claim 1.  The resulting claim issued as claim 14.

68.     The examiner, therefore, considered only the following limitations, from pending dependent claim 14, to distinguish issued claim 14 of the '100 patent over the prior art '144 patent:

> wherein the linking frame has a first portion provided with a first slide movably mounted on the base frame and a second portion provided with a second slide movably mounted on the base frame.

69.     The patent examiner would have considered prior art that disclosed the additional limitations of paragraph 68 material to the prosecution of the '100 patent.

70.     The patent examiner would have considered prior art that discloses the additional limitations of paragraph 68 non-cumulative with respect to the prior art that was of record during the prosecution of the '100 patent.

71.     Ruoey Lung added the limitations of pending dependent claim 2 to pending claim 1.  The resulting claim issued as claim 18.

72.     The examiner, therefore, considered only the following limitation, from pending dependent claim 2, to distinguish issued claim 18 of the '100 patent over the prior art '144 patent:

> wherein each of the two first links has a first portion pivotally mounted on the base frame and a second portion pivotally mounted on the first portion of the cushion.

73.     The patent examiner would have considered prior art that disclosed the additional limitations of issued paragraph 72 material to the prosecution of the '100 patent.

74.     The patent examiner would have considered prior art that discloses the additional limitations of paragraph 72 non-cumulative with respect to the prior art that was of record during the prosecution of the '100 patent.

75.     The '144 patent was the only prior art cited by the examiner during the prosecution of the application that issued as the '100 patent.

76.     Neither the listed inventor Lung-Tan Shih, the prosecuting attorney Kamrath, the assignee Ruoey Lung, nor anyone else associated with the prosecution of the application that issued as the '100 patent disclosed any prior art to the USPTO during the prosecution of that application.

## Background on Lung-Tan Shih

77.     On October 10, 2002, the USPTO published U.S. Patent App. No. US2002/0144350, entitled "Electric Folding Bed Having Adjustable Bed Frames" ("Adjustable Bed Frames Application").

78.     The Adjustable Bed Frames Application listed Lung-Tan Shih as the sole inventor.

79.     The published Adjustable Bed Frames Application is prior art to the '100 patent.

80.     The application that issued as the '100 patent and the Adjustable Bed Frames Application are both directed to similar subject matter – adjustable bed frames.

81.     Lung-Tan Shih failed to disclose the Adjustable Bed Frames Application to the USPTO during the prosecution of the '100 patent.

82.     On March 10, 2005, U.S. Provisional Application Number 60/660,228, entitled Electrically Adjustable Mattress for Use on Standard Mattress Foundation (the "Provisional Application") was filed.

83.     The Provisional Application lists Lung-Tan Shih as an inventor.

84.     The application that issued as the '100 patent and the Provisional Application are both directed to similar subject matter – adjustable bed frames.

85.     Lung-Tan Shih failed to disclose the Provisional Application to the USPTO during the prosecution of the '100 patent.

86.     Lung-Tan Shih purports to have close to twenty years of experience in the field of adjustable beds.

87.     In a declaration filed before the United States District Court for the Central district of California, Lung-Tan Shih testified:

- "I specialized in mechanical engineering design, and used to serve as a teaching faculty of mechanical engineering in the largest Vocational Training Center in Taiwan."
- "Ruoey Lung was established in 1995."
- "Rouey Lung is a designer and manufacturer of adjustable beds. For the passed 19 years, I have led the team to develop a variety of multi-function electric beds."
- "I am the named inventor of approximately 30 patents issued in different countries, including U.S. Patent No. 7,448, 100 (the "'100 Patent")."
- "I have knowledge about … the state of the art at the time of the inventions reflected in the '100 Patent."
- "Shu-Hui Yang is a manager at Rouey Lung …. [s]he has knowledge about … the state of the art at the time of the inventions."
- "Yu-Chi Yang is an engineer at Rouey Lung …. he has knowledge about … the state of the art at the time of the invention."
- "Heng-Sheng Chu is an employee at Rouey Lung …. he has knowledge about … the state of the art at the time of the invention."
- "Hui-Lan Lin is an employee at Rouey Lung …. he has knowledge about … the state of the art at the time of the invention."
  (Ruoey Lung v. Tempur-Pedic, No. 09-00675-AG(ANX), D.I. 40, Declaration of Lung-Tan Shih in Support of Ruoey Lung's Opposition to Motion for Transfer, ¶¶ 2-5, 13-15, and 19-25).

88.     Despite his alleged twenty years of experience in the field of adjustable beds, Lung-Tan Shih failed to disclose any prior art, possible prior uses, sales, offers to sell, derived knowledge, prior inventions, or co-pending applications, which were material to patentability of the '100 patent during its prosecution.

### **'309 Patent Application, References Cited Therein, and Office Action**

89.     On June 21, 2006, Kamrath filed the application which eventually issued as the '100 patent on November 11, 2008.  That application identified Lung-Tan Shih as the sole inventor and Ruoey Lung as the assignee.

90.     On September 13, 2006, Kamrath filed another patent application entitled "Automatically Operated Bed," which issued as U.S. Patent No. 7,293,309 (the "'309 patent") on November 13, 2007.  That application also identified Lung-Tan Shih as the inventor and Ruoey Lung as the assignee.

91.     The application that issued as the '100 patent was co-pending with the application that issued as the '309 patent from the time the '309 patent's application was filed until the '309 patent issued.

92.     The application that issued as the '100 patent and the application that issued as the '309 patent were assigned to different examiners during prosecution.

93.     The application that issued as the '100 patent and the application that issued as the '309 patent are both directed to similar subject matter – adjustable bed frames.

94.     During prosecution of the application that issued as the '309 patent, the patent examiner issued an office action dated April 19, 2007 ("Office Action") that cited four prior art references related to adjustable bed frames, including U.S. Patent No. 6,708,358 (the "'358 patent"), U.S. Patent No. 6,061,852 (the "'852 patent"), U.S. Patent No. 5,577,280 (the "'280 patent"), and U.S. Patent No. 4,928,332 (the "'332 patent").

95.     Despite the similarity of subject matter addressed in the '309 and '100 patents, Kamrath, Lung-Tan Shih, and Ruoey Lung failed to disclose the existence of the application

underlying the '309 patent, any references cited in it, or the Office Action to the examiner of the '100 patent.

96.     Because of Lung-Tan Shih's, Ruoey Lung's, and Kamrath's failure to disclose the application underlying the '309 patent, the Office Action, and the prior art cited in the '309 patent's application, the USPTO was unaware that the claimed motorized bed of the '100 patent had been described in prior art patents.

97.     The patent examiner would have considered the application underlying the '309 patent, the references cited therein, and the Office Action material to the patentability of the '100 patent.

98.     The patent examiner would have considered the application underlying the '309 patent, the references cited therein, and the Office Action non-cumulative with respect to the single prior art that was of record during the prosecution of the '100 patent, U.S. Patent No. 6,851,144 (the "'144 patent").

99.     On December 14, 2009, the Plaintiffs served an interrogatory on Defendants that requested the reasons why Lung-Tan Shih and Ruoey Lung failed to cite the prior art cited in the '309 patent during the prosecution of the '100 patent and all facts sufficient to withstand a motion to amend the Complaint to add a claim for inequitable conduct and/or survive a motion for summary judgment on this basis.

100.    The interrogatory also requested the approximate dates and times when conversations or correspondence involving the Defendants (or their attorneys and patent agents) occurred concerning such non-disclosure and all of the persons present during such conversations or included in such correspondence.

101.    Lung-Tan Shih and Ruoey Lung refused to answer Plaintiffs' interrogatory, contending, among other assertions, that it is irrelevant to the present action.

### Co-Pending '309 Patent Application and the Office Action

102.    Lung-Tan Shih was aware of the co-pending application underlying the '309 patent because he is listed as the sole inventor on the face of both the '309 patent.

103.    Ruoey Lung was aware of the co-pending application underlying the '309 patent because it was identified as the assignee in that application.

104.    Kamrath was aware of the co-pending application underlying the '309 patent because he prosecuted that patent application.

105.    The prior art cited by the examiner during the prosecution of the co-pending application underlying the '309 patent is material prior art for the reasons detailed below.

106.    The prior art cited by the examiner during the prosecution of the co-pending application underlying the '309 patent is material prior art for the reasons detailed below.

107.    The Office Action from the prosecution history of the '309 patent also characterizes one the prior art references as disclosing the limitation detailed in paragraph 72 above, which the examiner reviewing the '100 patent considered to be missing from the prior art of record.  In particular, the Office Action at p. 4 states that the Fig. 5 of the '852 patent "discloses an articulated bed frame in which the cushion . . . encloses the articulating framework."  The Office Action at page 7 also states that this aspect of the '852 patent can be combined with the other cited prior art references to vary the articulating frame structure inside a cushion.

108.    None of the prior art considered by the USPTO during prosecution of the '100 patent explicitly disclosed the additional limitations of paragraphs 64, 68, or 72 above.

109.     Lung-Tan Shih, the sole inventor identified on the face of the patent, had an obligation to disclose the co-pending application underlying the '309 patent to the USPTO during prosecution of the '100 patent.

110.     Ruoey Lung, the assignee identified in the application underlying the '100 patent, had an obligation to disclose the co-pending application underlying the '309 patent to the USPTO during prosecution of the '100 patent.

111.     Kamrath, the prosecuting attorney, had an obligation to disclose the co-pending application underlying the '309 patent to the USPTO during prosecution of the '100 patent.

112.     Lung-Tan Shih, Ruoey Lung, Kamrath each had over a year to disclose the co-pending application underlying the '309 patent to the USPTO before the '100 patent issued.

113.     Neither Lung-Tan Shih, Ruoey Lung, nor Kamrath disclosed the existence of the '358 patent to the examiner reviewing the application underlying the '100 patent.

114.     No one else disclosed the '358 patent to the examiner reviewing the application underlying the '100 patent.

115.     The USPTO never considered the '358 patent in connection with prosecution of the '100 patent application.

116.     Lung-Tan Shih, Ruoey Lung, and Kamrath withheld prior art and intended to deceive the USPTO into issuing the '100 patent.

## '358 Prior Art Patent

117.     Lung-Tan Shih, Ruoey Lung, Kamrath were all aware of the '358 patent because it was cited by the examiner in the co-pending application underlying the '309 patent.

118.     The '358 patent, which issued on March 23, 2004, is prior art to the '100 patent.

119.   The '358 patent discloses motorized beds with "articulating bed frames which will move rectilinearly toward the wall  . . . when the upper body portion of the bed is tilted upwardly." '358 Patent at 1:14-16.

120.   The motorized beds disclosed in the '358 patent include the limitations detailed in paragraph 64 above, which the examiner considered to be missing from the prior art of record. In particular, the '358 patent discloses a motorized bed with a linking frame that has a mediate portion provided with a support bracket (e.g., the carriage labeled as 230 in Fig. 9).  And the '358 patent discloses a motorized bed with a first support frame that has a first portion pivotally mounted on the support bracket of the linking frame and a second portion provided with a resting bar rested on the cushion (e.g., "upper body frame section" labeled as 42 in Fig. 5).

121.   The motorized beds disclosed in the '358 patent include the limitations detailed in paragraph 68 above, which the examiner considered to be missing from the prior art of record. In particular, the '358 patent discloses a motorized bed with a linking frame that has a first portion provided with a first slide movably mounted on the base frame and a second portion provided with a second slide movably mounted on the base frame (e.g., the carriage labeled as 30 in Fig. 1 has rollers labeled as 32 that allow the carriage to slide along the two longitudinal slides labeled as 14 and 16).

122.   None of the prior art considered by the USPTO during prosecution of the '100 patent explicitly disclosed the additional limitations of paragraphs 64 and 68 above.

123.   The '358 patent was material prior art.

124.   The '358 patent was non-cumulative with respect to the prior art that was of record during prosecution of the '100 patent.

125.    Lung-Tan Shih, the sole inventor identified on the face of the patent, had an obligation to disclose the '358 patent to the USPTO during prosecution of the '100 patent.

126.    Ruoey Lung, the assignee identified in the application underlying the '100 patent, had an obligation to disclose the '358 patent to the USPTO during prosecution of the '100 patent.

127.    Kamrath, the prosecuting attorney, had an obligation to disclose the '358 patent to the USPTO during prosecution of the '100 patent.

128.    Lung-Tan Shih, Ruoey Lung, Kamrath each had over a year to disclose the '358 patent to the USPTO before the '100 patent issued.

129.    Neither Lung-Tan Shih, Ruoey Lung, nor Kamrath disclosed the existence of the '358 patent to the examiner reviewing the application underlying the '100 patent.

130.    No one else disclosed the '358 patent to the examiner reviewing the application underlying the '100 patent.

131.    The USPTO never considered the '358 patent in connection with prosecution of the '100 patent application.

132.    Lung-Tan Shih, Ruoey Lung, and Kamrath withheld prior art and thereby intended to deceive the USPTO into issuing the '100 patent.

## '852 Prior Art Patent

133.    Lung-Tan Shih, Ruoey Lung, and Kamrath were all aware of the '852 patent because it was cited by the examiner in the co-pending application underlying the '309 patent.

134.    The '852 patent, which issued on May 16, 2000, is prior art to the '100 patent.

135.    The motorized beds disclosed in the '852 patent include the limitations detailed in paragraph 72 above, which the examiner considered to be missing from the prior art of record.

In particular, the '852 patent discloses a motorized bed in which the articulating frame is pivotally mounted on the cushion (see Figs. 1, 3 & 5).

136.    None of the prior art considered by the USPTO during prosecution of the '100 patent explicitly disclosed the additional limitations of paragraphs 72 above.

137.    The '852 patent was material prior art.

138.    The '852 patent was non-cumulative with respect to the prior art that was of record during prosecution of the '100 patent.

139.    Lung-Tan Shih, the sole inventor identified on the face of the patent, had an obligation to disclose the '852 patent to the USPTO during prosecution of the '100 patent.

140.    Ruoey Lung, the assignee identified in the application underlying the '100 patent, had an obligation to disclose the '852 patent to the USPTO during prosecution of the '100 patent.

141.    Kamrath, the prosecuting attorney, had an obligation to disclose the '852 patent to the USPTO during prosecution of the '100 patent.

142.    Lung-Tan Shih, Ruoey Lung, and Kamrath each had over a year to disclose the '852 patent to the USPTO before the '100 patent issued.

143.    Neither Lung-Tan Shih, Ruoey Lung, nor Kamrath disclosed the existence of the '852 patent to the examiner reviewing the application underlying the '100 patent.

144.    No one else disclosed the '852 patent to the examiner reviewing the application underlying the '100 patent.

145.    The USPTO never considered the '852 patent in connection with prosecution of the '100 patent application.

146.    Lung-Tan Shih, Ruoey Lung, and Kamrath withheld prior art and intended to deceive the USPTO into issuing the '100 patent.

**'280 Prior Art Patent**

147.     Lung-Tan Shih, Ruoey Lung, and Kamrath were all aware of the '280 patent because it was cited by the examiner in the co-pending application underlying the '309 patent.

148.     The '280 patent, which issued on November 26, 1996, is prior art to the '100 patent.

149.     The '280 patent discloses motorized beds which are "adjustable to provide the desired contoured support."   '280 Patent at 1:16-17.

150.     The motorized beds disclosed in the '280 patent include some of the limitations detailed in paragraph 64 above, which the examiner considered to be missing from the prior art of record.  In particular, the '280 patent discloses a motorized bed with a linking frame that has a mediate portion provided with a support bracket (e.g., the "foundation frame" labeled as 154 in Fig. 4 with its "lateral support members" labeled as 223a and 223b).  And the '280 patent discloses a motorized bed with a first support frame that has a first portion pivotally mounted on the support bracket of the linking frame (e.g., the hinged support labeled as 204 in Fig. 7).

151.     The motorized beds disclosed in the '280 patent include the limitations detailed in paragraph 68 above, which the examiner considered to be missing from the prior art of record. In particular, the '280 patent discloses a motorized bed with a linking frame that has a first portion provided with a first slide movably mounted on the base frame and a second portion provided with a second slide movably mounted on the base frame (e.g., the "foundation frame" labeled as 154 in Fig. 4 has sleeves labeled as 144, 146, 148, and 150 that allow the "foundation frame" to slide along the rail guides labeled as 128, 130, 132, and 134).

152.     None of the prior art considered by the USPTO during prosecution of the '100 patent explicitly disclosed the additional limitations of paragraphs 64 and 68 above.

153.    The '280 patent was material prior art.

154.    The '280 patent was non-cumulative with respect to the prior art that was of record during prosecution of the '100 patent.

155.    Lung-Tan Shih, the sole inventor identified on the face of the patent, had an obligation to disclose the '280 patent to the USPTO during prosecution of the '100 patent.

156.    Ruoey Lung, the assignee identified in the application underlying the '100 patent, had an obligation to disclose the '280 patent to the USPTO during prosecution of the '100 patent.

157.    Kamrath, the prosecuting attorney, had an obligation to disclose the '852 patent to the USPTO during prosecution of the '100 patent.

158.    Lung-Tan Shih, Ruoey Lung, and Kamrath each had over a  year to disclose the '280 patent to the USPTO before the '100 patent issued.

159.    Neither Lung-Tan Shih, Ruoey Lung, nor Kamrath disclosed the existence of the '280 patent to the examiner reviewing the application underlying the '100 patent.

160.    No one else disclosed the '280 patent to the examiner reviewing the application underlying the '100 patent.

161.    The USPTO never considered the '280 patent in connection with prosecution of the '100 patent application.

162.    Lung-Tan Shih, Ruoey Lung, and Kamrath withheld prior art and intended to deceive the USPTO into issuing the '100 patent.

### **'647 and '011 Patents**

163.    On or about March 29, 2006, Mrs. Sophia Shih, the wife of Lung-Tan Shih and a co-owner and manager of Ruoey Lung, sent an email to Rawls-Meehan identifying two patents

related to adjustable beds that were material prior art to the '100 patent:  U.S. Patent No.

6,101,647 (the "'647 patent"), and  U.S. Patent No. 6,276,011 (the "'011 patent)."

164.    Upon information and belief, Sophia Shih was familiar with Ruoey Lung's

intellectual property portfolio and served as an intermediary between Ruoey Lung and its

intellectual property attorneys.  She knew that the application which would issue as the '100

Patent was pending at the time she learned of  the '647 or the '011 and that the '647 or the '011

were material, non-cumulative, references to the application which would issue as the '100

Patent.

165.    Neither Sophia Shih, Lung-Tan Shih, nor anyone else cited the '647 or the '011

prior art patents during the prosecution of the '100 patent.

166.    Because of the failure to disclose the '647 and '011 patents, the USPTO was

unaware that the claimed invention of the '100 patent had already been described in prior art

patents.

167.    The patent examiner would have considered the '647 and '011 patents material to

the prosecution of the '100 patent.

168.    The patent examiner would have considered the '647 and '011 patents non-

cumulative with respect to the prior art that was of record during the prosecution of the '100

patent.  The USPTO would not have issued the '100 patent if it had known that the invention

claimed in the '100 patent was already in the prior art.

### **'647 Patent**

169.    The '647 patent, which issued on August 15, 2000, is prior art to the '100 patent.

170.    The motorized beds disclosed in the '647 patent include some of the limitations

detailed in paragraph 64 above, which the examiner considered to be missing from the prior art

of record.  In particular, the '647 patent discloses a motorized bed with a linking frame that has a mediate portion provided with a support bracket (e.g., the frame labeled as 24 in Fig. 2).  And the '647 patent discloses a motorized bed with a first support frame that has a first portion pivotally mounted on the support bracket of the linking frame (e.g., the frame sections labeled as 58 and 60 in Fig. 2).

171.    The motorized beds disclosed in the '647 patent include the limitations detailed in paragraph 68 above, which the examiner considered to be missing from the prior art of record. In particular, the '647 patent discloses a motorized bed with a linking frame that has a first portion provided with a first slide movably mounted on the base frame and a second portion provided with a second slide movably mounted on the base frame (e.g., the upper frame labeled as 24 in Fig. 2 has two portions, each with rollers labeled as 37, that allow the upper frame to slide along the base frame labeled as 22).

172.    None of the prior art considered by the USPTO during prosecution of the '100 patent explicitly disclosed the additional limitations of paragraphs  64 and 68 above.

173.    The '647 patent was material prior art.

174.    The '647 patent was non-cumulative with respect to the prior art that was of record during prosecution of the '100 patent.

175.    Lung-Tan Shih, the sole inventor identified on the face of the patent, had an obligation to disclose the '647 patent to the USPTO during prosecution of the '100 patent.

176.    Ruoey Lung, the assignee identified in the application underlying the '100 patent, had an obligation to disclose the '647 patent to the USPTO during prosecution of the '100 patent.

177.    Lung-Tan Shih and Ruoey Lung each had over two years to disclose the '647 patent to the USPTO before the '100 patent issued.

178.    Neither Lung-Tan Shih nor Ruoey Lung disclosed the existence of the '647 patent to the examiner reviewing the application underlying the '100 patent.

179.    No one else disclosed the '647 patent to the examiner reviewing the application underlying the '100 patent.

180.    The USPTO never considered the '647 patent in connection with prosecution of the '100 patent application.

181.    Lung-Tan Shih and Ruoey Lung withheld prior art and thereby intended to deceive the USPTO into issuing the '100 patent.

## '011 Patent

182.    The '011 patent, which issued on August 21, 2001, is prior art to the '100 patent.

183.    The motorized beds disclosed in the '011 patent include the limitations detailed in paragraph 64 above, which the examiner considered to be missing from the prior art of record. In particular, the '011 patent discloses a motorized bed with a linking frame that has a mediate portion provided with a support bracket (e.g., the "slide frame" labeled as 41 in Fig. 3).  And the '011 patent discloses a motorized bed with a first support frame that has a first portion pivotally mounted on the support bracket of the linking frame and a second portion provided with a resting bar rested on the cushion (e.g., the "backrest frame" labeled as 50 and 87 in Fig. 3).

184.    The motorized beds disclosed in the '011 patent include the limitations detailed in paragraph 68 above, which the examiner considered to be missing from the prior art of record. In particular, the '011 patent discloses a motorized bed with a linking frame that has a first portion provided with a first slide movably mounted on the base frame and a second portion provided with a second slide movably mounted on the base frame (e.g., the "slide frame" labeled

as 41 in Fig. 3 has two portions, each with rollers labeled as 71, that allow the upper frame to slide along the base frame labeled as 31).

185.    None of the prior art considered by the USPTO during prosecution of the '100 patent explicitly disclosed the additional limitations of paragraphs 64 and 68 above.

186.    The '011 patent was material prior art.

187.    The '011 patent was non-cumulative with respect to the prior art that was of record during prosecution of the '100 patent.

188.    Lung-Tan Shih, the sole inventor identified on the face of the patent, had an obligation to disclose the '011 patent to the USPTO during prosecution of the '100 patent.

189.    Ruoey Lung, the assignee identified in the application underlying the '100 patent, had an obligation to disclose the '011 patent to the USPTO during prosecution of the '100 patent.

190.    Lung-Tan Shih and Ruoey Lung each had over two years to disclose the '011 patent to the USPTO before the '100 patent issued.

191.    Neither Lung-Tan Shih, nor Ruoey Lung disclosed the existence of the '011 patent to the examiner reviewing the application underlying the '100 patent.

192.    No one else disclosed the '011 patent to the examiner reviewing the application underlying the '100 patent.

193.    The USPTO never considered the '011 patent in connection with prosecution of the '100 patent's application.

194.    Lung-Tan Shih and Ruoey Lung withheld prior art and thereby intended to deceive the USPTO into issuing the '100 patent.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs request that this Court:

A.      order correction of the '100 patent to name Martin Rawls-Meehan as an inventor and as otherwise necessary to accurately reflect the inventorship of the claimed subject matter;

B.      declare and adjudge that Ascion does not infringe, and has not infringed, the '100 patent;

C.      declare and adjudge that the '100 patent is invalid;

D.      declare and adjust that the '100 patent is unenforceable;

E.      enter judgment that Ruoey Lung has intentionally and improperly interfered with plaintiffs' actual and prospective business relations, and award damages adequate to compensate plaintiffs for the injury caused by such actions;

F.      preliminarily and permanently enjoin Ruoey Lung, its agents, and its affiliates, from further interfering with plaintiffs' actual and prospective business relations;

G.      enter judgment that Ruoey Lung, Oko, and Lung Tang have breached their contract with Ascion, and award damages adequate to compensate plaintiffs for the injury caused by such breach, including, without limitation, all attorneys fees and costs incurred;

H.      enter judgment that Ruoey Lung, Oko, and Lung Tang have breached the warranty against infringement provided for in the Uniform Commercial Code and other applicable statutes, laws and regulations, and award damages adequate to compensate plaintiffs for the injury caused by such breach, including, without limitation, all attorneys fees and costs incurred;

I.      award plaintiffs their attorneys fees under 35 U.S.C. § 285 and other provisions of law;

J.      award plaintiffs interest and costs; and

K.      award plaintiffs such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a jury trial on all issues so triable.

Respectfully Submitted,

Ascion, LLC and Martin Rawls-Meehan,

By their attorneys,

Dated: January 6, 2011

/s/ Michael A. Albert
Allen S. Rugg (BBO # 674484)
arugg@wolfgreenfield.com
Michael A. Albert (BBO # 558566)
malbert@wolfgreenfield.com
John Strand (BBO #654985)
jstrand@wolfgreenfield.com
Eric G. J. Kaviar (BBO # 670833)
ekaviar@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
617.646.8000 phone
617.646.8646 facsimile

## CERTIFICATE OF SERVICE

I certify that this document is being filed through the Court' electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

/s/ Michael A. Albert