## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ASCION, LLC  and MARTIN RAWLS-
MEEHAN,
           Plaintiffs,
v.
RUOEY LUNG ENTERPRISE CORP.
and LUNG-TAN SHIH,
           Defendants.

RUOEY LUNG ENTERPRISE CORP.,
           Plaintiff,
v.
TEMPUR-PEDIC, INTERNATIONAL INC.;
TEMPUR-PEDIC SALES, INC.; TEMPUR-
PEDIC NORTH AMERICA LLC; OPTIMA
HEALTHCARE, INC.; and APEX HEALTH
CARE MANUFACTURING, INC.,
           Defendants.

**Civil Action No. 09-11550-GAO**

(Consolidated with Civil Action
  No. 09-10293-WGY)

Leave to File Granted on January 5,
2011

## RUOEY LUNG ENTERPRISE CORP.'S AND LUNG TAN SHIH'S OPPOSITION TO DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY

**TABLE OF CONTENTS**

**PAGE**

I.      INTRODUCTION ......................................................................................... 1

II      FACTUAL BACKGROUND .......................................................................... 2

III.    STANDARD FOR SUMMARY JUDGMENT ................................................. 3

IV.     THERE IS AT LEAST AN ISSUE OF FACT AS TO WHETHER THE ACCUSED
        PRODUCTS INFRINGE THE CLAIMS OF THE '100 PATENT................................... 3

V.      THERE IS AT LEAST AN ISSUE OF FACT AS TO WHETHER THE ACCUSED
        BEDS HAVE A "CUSHION" THAT IS "MOUNTED" TO THE "FRAME" THAT
        "MOVES THEREWITH" ................................................................................. 4

VI.     THERE IS AT LEAST AN ISSUE OF FACT AS TO WHETHER THE SINGLE
        "STABLIZER ARM" INFRINGES THE "TWO FIRST LINKS" LIMITATION
        BY THE DOCTRINE OF EQUIVALENTS. ................................................... 16

VII.    THERE IS AT LEAST AN ISSUE OF FACT AS TO WHETHER THE ACCUSED
        BEDS HAVE A "RESTING BAR RESTED ON THE CUSHION" ............................ 20

VIII.   THERE IS AT LEAST AN ISSUE OF FACT AS TO WHETHER THE '100
        PATENT IS ANTICIPATED ........................................................................ 22

IX.     THERE IS AT LEAST AN ISSUE OF FACT AS TO WHETHER THE '100
        PATENT IS INVALID PURSUANT TO THE ON-SALE BAR ................................. 37

X.      CONCLUSION ........................................................................................... 38

## TABLE OF AUTHORITIES (IN ALPHABETICAL ORDER)

PAGE

## Cases

Abbott Laboratories v. Dey,
    287 F.3d 1097, 1107-08 (Fed. Cir. 2002) ......................................................... 17

Abraxis Bioscience, Inc. v. Mayne Parma (USA), Inc.,
    467 F.3d 1370, 1379 (Fed.Cir. 2006)............................................................... 16

Adams Respiratory Therapeutics, Inc. v. Perrigo Co.,
    606 F.3d 1283, 1291-92 (Fed. Cir. 2010) ................................................... 17, 18

Alpex Computer Corp.v. Nintendo Co.,
    102 F.3d 1214, 1222 (Fed.Cir. 1996)............................................................... 17

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 252 (1986)............................................................................. 3, 22

Apotex USA, Inc. v. Merck & Co.,
    254 F.3d 1031, 1036 (Fed.Cir. 2001)............................................................... 22

Apple Computer, Inc. v. Articulate Sys., Inc.,
    234 F.3d 14, 20 (Fed.Cir.2000)....................................................................... 22

Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.,
    73 F.3d 1573 (Fed. Cir. 1996)......................................................................... 18

Cybor Corp. v. FAS Techs., Inc.,
    138 F.3d 1448, 1454 (Fed. Cir. 1998)............................................................... 3

DeMarini Sprint, Inc. v. Worth, Inc.,
    239 F.3d 1314, 1332 (Fed. Cir. 2001)............................................................. 18

Dolly, Inc. v. Spalding & Evenflo Companies, Inc.,
    16 F.3d 394, 298 (Fed. Cir. 1994)................................................................... 18

Farrago v. Rawlings Sporting Goods Co., Inc.,
    2008 WL 880178 (E.D. Mo. 2008)................................................................. 19

General Mills, Inc. v. Hunt-Wesson, Inc.,
    103 F.3d 978, 980–1 ......................................................................................... 3

Graver Tank & Mfg. Co. v. Linde Air Products Co.,
    339 U.S. 605, 608 – 609 (1950)......................................................................... 16

Holmes Group, Inc. v. RPS Products, Inc.,
    424 F.Supp.2d 271 (D.Mass. 2006) ................................................................. 19

In re Katz  Interactive Call Processing Patent Litigation,)
    2009 WL 1351043 (C.D. Cal. 2009 .................................................................. 18

Intellectual Science and Technology, Inc. v. Sony Electronics, Inc.
    589 F.3d 1179, 1183 (Fed. Cir. 2009).............................................................. 3

Lantech v. Keip Machine Co.,
    32 F.3d 542 (Fed. Cir. 1994)............................................................................ 19

McKay v. United States,
    199 F.3d 1376, 1380 (Fed. Cir. 1999)............................................................. 4

Metropolitan Life Ins. Co. v. Bancorp Services, L.L.C.,
    527 F.3d 1330, 1339 (Fed. Cir. 2008)............................................................. 3

Netword. LLC v. Centraal Corp.,
    242 F.3d 1347, 1353 (Fed. Cir. 2001)............................................................. 4

NuClimate Air Quality Systems, Inc. v. M&I Heat Transfer Products, Ltd.,
    2008 WL 2917589 ............................................................................................. 19

Okor v. Sega of America, Inc.,
    193 F.Supp.2d 269 (D.Mass. 2001) ................................................................. 19

Pitney Bowes, Inc. v. Hewlett-Packard Co.,
    182 F.3d 1298, 1304 (Fed. Cir. 1999).............................................................. 4

TriMed, Inc. v. Stryker Corp.,
    608 F.3d 1333, 1343 (Fed. Cir. 2010).............................................................. 23

U.S. Philips Corp. v. Iwasaki Electric Co., Ltd.,
    505 F.3d 1371, 1378-80 (Fed. Cir. 2007) ....................................................... 17

Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,
    520 U.S. 17, 38 n8 (1997)............................................................................. 4, 16, 17

This memorandum is submitted by Ruoey Lung Enterprise Corp. and Lung-Tan Shih (collectively "RL") in opposition to the motion for partial summary judgment[1] made by Ascion, LLC, Martin Rawls-Meehan, Tempur-Pedic, International, Inc., Tempur-Pedic Sales, Inc., Tempur-Pedic North America LLC, Optima Healthcare, Inc., and Apex Health Care Manufacturing, Inc. (collectively "Ascion") with respect to RL's claims that these various moving parties infringe one or more claims of U.S. Patent No. 7,448,100 (the "'100 patent")

## I.     INTRODUCTION

Ascion bases its motion for partial summary judgment on two grounds: (1) the patents are not infringed because the accused products do not contain an element common to all (or some) of the asserted claims; and (2) the patents are invalid as anticipated.

Ascion's non-infringement claim is based on three arguments: (1) the accused beds do not contain a claimed "cushion" which is "mounted" to the bed's frame; (2) certain of the accused beds do not have "two first links;"[2] and (3) the accused beds do not have a resting bar rested on the "cushion."   Tellingly, Ascion presents no expert testimony whatever to support any of its non-infringement arguments.

---

[1] Although Ascion styles its motion as one for "summary judgment" on certain claims, its motion, since it does not resolve all claims against all moving parties is more properly styled as one for partial summary judgment with respect to RL's claims against the moving defendants for infringement of the '100 patent and, presumably, the moving parties' counterclaims for declaratory judgment of non-infringement and invalidity.

[2] Ascion admits that some of the accused beds do have two first links, as set forth in the asserted claims.   As this Court is aware, RL believes that there is a serious question as to whether Ascion is, even selling beds with one first link and whether its customers, including defendant Tempurpedic, are continuing to sell such beds.  RL, of course, believes that both the one arm and two arm beds infringe the '100 patent.

Ascion's claim that the '100 patent is invalid is limited to three arguments: (1) Each claim of the patent is anticipated by the "Hensley" patent; (2) each claim of the patent is anticipated by the "Stroud" patent; (3) the patent is invalid under the so-called "on-sale bar."[3]

As set forth below, RL has submitted expert testimony raising an issue of fact as to each and every ground for summary judgment presented by Ascion.  RL's submission, in fact, constitutes the <u>only</u> expert testimony presented by <u>either</u> party on Ascion's non-infringement claims.  With respect to Ascion's invalidity arguments, the expert testimony presented by RL directly disputes the anticipation arguments made by Ascion's expert, precluding summary judgment.

Accordingly, since there is at least an issue of fact as to each ground on which Ascion's supports its motion, this motion must be denied.

## II.        FACTUAL BACKGROUND

As Ascion notes, the "facts" set forth in its lengthy background of the dispute between the parties are wholly irrelevant to any ground presented by Ascion as a basis for summary judgment and will not be discussed here in any depth.   It should be noted, however, that in this "factual background," Ascion attempts to explain why Ascion's managing member, Martin Rawls-Meehan, is the "real" inventor of the '100 patent but any claim that the patent is invalid because of improper inventorship is absent from its motion, making this "factual" background irrelevant to any issue raised by Ascion.  Suffice it to say that Mr. Rawls-Meehan's inventorship claim is firmly disputed.[4]

---

[3] This third argument is contained in Ascion's "addendum" to its summary judgment motion.
[4] <u>See</u> Shih Affid. ¶3-4 .

### III.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is reserved for cases without a "genuine issue as to any material fact" where the "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56. It is the moving party's burden to show that summary judgment should be granted and its burden to present evidence supporting its claim that there are no factual issues.  Id. Summary judgment is improper when the record contains "evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986);  Intellectual Science and Technology, Inc. v. Sony Electronics, Inc.  589 F.3d 1179, 1183 (Fed. Cir. 2009).

Resolving credibility disputes is not appropriate on summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict); Metropolitan Life Ins. Co. v. Bancorp Services, L.L.C.  527 F.3d 1330, 1339 (Fed. Cir. 2008).  Indeed, a conflict in expert opinion on a material issue raises an issue of fact precluding summary judgment. Metropolitan Life, 527 F.3d at 1339.

### IV.    THERE IS AT LEAST AN ISSUE OF FACT AS TO WHETHER THE ACCUSED PRODUCTS INFRINGE THE CLAIMS OF THE '100 PATENT

Determination of whether a patent is infringed requires a two-step process.  "First, the court determines the scope and meaning of the patent claims asserted … [and second] the properly construed claims are compared to the allegedly infringing device." Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998).

Whether a properly construed claim corresponds or "reads on" the accused device is generally one of fact.  General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 980–1 (Fed. Cir.

1997).  Since the court has already issued its claim construction ruling, and within the context of a motion for summary judgment, the Court must engage in a fact-intensive inquiry as to whether a comparison of the claims of the '100 Patent with the Accused Beds shows that "no reasonable jury could … f[ind] infringement on the undisputed facts…." Netword. LLC v. Centraal Corp., 242 F.3d 1347, 1353 (Fed. Cir. 2001); Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co., 520 U.S. 17, 38 n8 (1997).  All reasonable inferences must be resolved against the non-moving party. McKay v. United States, 199 F.3d 1376, 1380 (Fed. Cir. 1999).  Accordingly, "summary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999); McKay, 199 F.3d at 1380.

## V.    THERE IS AT LEAST AN ISSUE OF FACT AS TO WHETHER THE ACCUSED BEDS HAVE A "CUSHION" THAT IS "MOUNTED" TO THE "FRAME" THAT "MOVES THEREWITH"

Ascion's motion for summary judgment of non-infringement is, in part, based on its identification of the separate thick non-bendable mattress as depicted in the picture on page 16 of its memorandum as the "cushion" referred to in the claims of the '100 patent.  Ascion argues, based on that assumption, that that "cushion" is not "mounted" to the frame of the accused products.  Ascion provides no explanation or expert testimony as to why, as a matter of law, the separate, thick rigid mattress is the "cushion" identified in the claims.  However, it is clear, based on the patent and the Court's claim construction, that this position is fundamentally incorrect and contrary to both the patent itself and its construction by the Court.  In fact, the "cushion" of the accused products is a separate element of the accused beds, which is "mounted" to the frame.

4

As the Court held in the Claim Construction Order, "[e]ach independent claim describes a 'cushion' that is mounted so as to move with the 'support frames' as they are adjusted and elevated to permit the user to sit up with his legs supported. '100 Patent 4:39-42." Claim Construction Order at 4. Although the Court noted that "[a]s used in the '100 Patent, the term 'cushion' probably needs no construction" the court held that "[t]o settle the argument, however, it will be construed to mean a pliable mattress cushion.'" Claim Construction Order at 5.

Although, in its memorandum, Ascion consistently replaces the word "cushion" with "mattress" when discussing the independent claims, the term "mattress" is never used in any of the independent or dependent claims. Indeed, the term "mattress" does not even appear in the patent, either in the claims or in the specification. Indeed, it is quite obvious that the item that Ascion identifies as a "mattress" is <u>not</u> the "cushion" as described in the patent. Stevick Affid. ¶ 23.

The "cushion" described in the asserted claims is the wooden foundation for each of the four movable sections of the bed and their foam covering, both on the top and on the sides. Stevick Affid. ¶ 24. These cushions are depicted in the following picture:



Foam under top ticking

Wood foundation

Foam skirt

The basis for this position -- that the wooden foundation plus the foam is the claimed "cushion" -- is the patent itself.  The patent identifies the "cushion" as the item designated by the number "**60**" in the patent's figures.  As seen in Figs. 5, 6 and 7, reproduced below, the "cushion" designated by the number "**60**" is not the mattress, as Ascion refers to it, but rather, the rectangular structure on which the mattress rests. Stevick Affid. ¶25. It also satisfies the Court's definition of "cushion" as a "pliable mattress cushion" because, as shown in the picture below, the foundation/foam combination is clearly "pliable" in that the cushion "plies" between its four sections to allow the bed to adjust.  Stevick Affid. ¶ 25.



Exposed side view showing pliable foam bending at the joint between wood foundations



FIG. 5



FIG. 6



FIG. 7

This position, that the wooden foundation/foam combination is the claimed "cushion" is supported by both the '100 patent itself and by its prosecution history.

As the '100 patent's specification provides, "[e]ach of the two first links **12** has a first portion pivotally mounted on the base frame **10** and a second portion pivotally mounted on the

<u>first portion of the cushion **60**</u>." '100 Patent 3:20-22 (emphasis supplied) This can be clearly

seen in Figs. 6 and 7 above and is also claimed in Claim 18. As Ascion's expert, Dr. Stein, notes

in his affidavit, if the claimed "cushion" does <u>not</u> have a rigid element to which the first link

could attach (as Ascion argues), "[s]uch a mounting is impracticable and unworkable" because

cushions without such a rigid element "simply do not have the support in them to attach rigid

(likely metal) objects and carry the load of the mattress and user." Stein Affid. ¶ 54. Thus, the

patent itself anticipates that the claimed "cushion" would have a rigid element (which could

include a piece of wood) to which the "first links" could attach.

This position is also supported by the prosecution history of the '100 patent. In an

Office Action, the examiner compared U.S. Patent No. 6,851, 144 to RL's invention, stating that

the '144 patent had a "<u>cushion</u> defined by mattress divided into parts (7,9,11,13) mounted on the

linking frame…" Office Action mailed 4/17/2008 at 2 (emphasis added). It is clear from the

'144 patent that the "cushion" contains a rigid element. In Figure 1 below, the "cushion" is

designated by numbers 7, 9, 11 and 13.



FIG.1                              FIG.5A

The patent states, describing Figure 5A, that "the links **55** rotate the transverse shaft **57** for the same to raise or lower <u>two raising arms **59** fixedly connected</u> at lower ends to two ends of the transverse shaft **57** and <u>at upper ends to the back rest part **7** or the connected thigh rest part **11** and leg rest part **13**</u>, so that the parts are adjusted to different angles of inclination relative to the lower bed frame **23**." '144 patent, 6:8-14 (emphasis added).  For these "two raising arms" to be "fixedly connected" to the <u>bottom</u> of the "cushion," this cushion must have a rigid foundation, such as wood.   Clearly, the USPTO Examiner knew that a cushion could be a thin soft structure as identified in figure 1 of the '144 Patent that was attached to a more rigid structure that in turn worked with the a raising and lowering mechanism.  This is precisely the structure that Ascion produces.

The analysis of whether the Accused Products are covered by the asserted claims of the '100 Patent must proceed keeping in mind the proper designation of which portion of the Accused Products represents the "cushion."

The foundation/foam "cushion" is "mounted" on the various "frames" of the accused products.  Stevick Affid. ¶26.  Although Ascion argues that this element is not satisfied because the "mattresses of the accused beds are not mounted to anything," this argument is fundamentally incorrect because of Ascion's incorrect designation of the thick non-bendable mattress as the claimed "cushion."  The question actually is whether the cushion of the Accused Products is "mounted" to the "frame" of the bed.  As Dr. Stevick, testifies, it is. Stevick Affid. ¶26.

The Court defined the term "mounted" as follows:  "[an] element may be said to be 'mounted' if it is 'attached or affixed to another element either directly or by means of a device or structure that facilitates or accomplishes the attachment."  Claim Construction Order at 6.  As

shown in the pictures below, each section of the wooden foundation is attached directly to the frame of the accused products.  Thus, each section of the "cushion" of the Accused Products is "mounted" to the "frame." Stevick Affid. ¶27.





Mounts to lift frame





First portion

Mounts to second
support frame

Second portion

Alternatively, even if the "cushion" of the accused beds is limited to the foam covering of the wooden foundation (which is clearly "pliable"), this "cushion" is also "mounted" to the frame of the accused beds.  Stevick Affid. ¶28.

As set forth above, the foam covering for the wooden foundation is "mounted" to the metal frame, according to the Court's definition of the term "mounted."  Specifically, although the foam is not attached directly to the metal frame, it is attached "by means of a device or structure that facilitates or accomplishes the attachment" – the wooden foundation," as set forth in the picture,  Additionally, the cushion is held on to the metal frame by the cloth covering the cushion, which extends vertically downward from the top of the cushion.   Accordingly, even this "cushion" is "mounted" to the "frame" of the Accused Products.  Stevick Affid. ¶29.

Indeed, this Court made it quite clear that the term "mounted" can include both direct and indirect attachment, noting that "one would have no trouble in saying that a picture was mounted on a wall when it was hung on a hook that was affixed to the wall."[5]  The fact that there is a wooden foundation between the foam and the metal frame does not preclude the foam from being "mounted" on the frame.

 Ascion's argument – that the thick non-bendable <u>mattress</u> is the claimed "cushion," ignores the Court's claim construction and simply adopts its own <u>proposed</u> construction – which was firmly rejected by the Court.  As this Court will recall, Ascion argued for a construction of the claim term "cushion" that would include rigid mattresses that could not work with the '100 Patent invention.  However, at the hearing, counsel for the Ascion Defendants engaged in the following colloquy with the Court:

---

[5] Claim Construction Order at 6.

MR. ALBERT:  [B]y calling [the cushion] a mattress [Ruoey Lung is] concerned that it might not be deemed to be bendable.  And they say the problem with this definition is that one of ordinary skill in the art would think of a mattress as being flat, like one used on a regular bed.  But from the industry literature, it's clear that a mattress on an adjustable bed can be bendable…. So 'cushion' means 'mattress.'  And if the Court remains concerned about whether using the term 'mattress' as the construction would preclude the capacity to bend, the Court could construe 'cushion' to mean a mattress, bendable or not.  You know, the bendability of it is not going to be a material issue in this case, so we're not concerned with bendability."

THE COURT:  How would a non-bendable mattress be useful to this invention?

MR. ALBERT:  It really wouldn't.

THE COURT:  So that by the nature of the cushion, or the mattress, has to be bendable, doesn't it?

MR. ALBERT:  Well, you could have an adjustable bed, which maybe it went up and down, but certainly there's no dispute in this case, it's a mattress and Ascion doesn't dispute that it can be bendable.  So perhaps we can -- we tried to actually stipulate to the proposed construction of this by saying a mattress, it can be bendable, but somehow that never happened.  But that's not a concern of ours in the case at this point. [6]

Indeed, in arguing that the thick mattress depicted in their memorandum is the claimed "cushion," a mattress which is quite obviously not "bendable," Ascion ignores its own admission that a mattress used with an adjustable bed is, by definition, "bendable."

However, even if the cushion is the item specified by Ascion – the "mattress" that goes on top of the foundation/foam structure, that cushion is also "mounted" on the frame of the accused beds, in that it is attached "by means of a device or structure that facilitates or accomplishes the attachment." Stevick Affid. ¶30.

First, the picture of Ascion's frame/mattress combination as depicted in Ascion's papers is actively misleading.  As set forth in pictures from both Reverie's[7] and Tempurpedic's[8]

---

[6] Markman Hearing Transcript at 33:13 - 34: 23.
[7] "Reverie" is the brand name used by Ascion and that the beds depicted on its website are sold by Ascion.
[8] The "Ergo" adjustable beds sold by Tempurpedic are purchased by Tempurpedic from Ascion.

14

websites, the mattress <u>actually</u> used on the Ascion adjustable beds "molds" to the shape of the frame as it adjusts.  Stevick Affid. ¶31.  The Tempurpedic mattress is, in fact, manufactured from foam specially designed to be sufficiently pliable to conform to the adjustable frame.   This mattress does not, as Ascion contends, "just sit there" or slide off the frame, as Ascion describes. If it did so, the adjustable beds would be useless to the consumer and would clearly not command the $3000 or more per bed Tempurpedic charges for this product.  (Stevick Affid. ¶31.

 

**Reverie Deluxe™**              **Tempurpedic Advanced Ergo Adjustable Base**

 

**Reverie Comfort™**              **Tempurpedic Ergo Adjustable Base**

This mattress is also "mounted" to the frame.  As shown in above pictures and from the users manuals, the mattress is kept in place by a metal bar at the foot of the mattress which holds the mattress on to the frame so that it does not slip off (referred to by Tempurpedic as the "retainer