## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

ASCION, LLC  and MARTIN RAWLS-

MEEHAN,

                Plaintiffs,

v.

RUOEY LUNG ENTERPRISE CORP.

and LUNG-TAN SHIH,

                Defendants.

---

RUOEY LUNG ENTERPRISE CORP.,

                Plaintiff,

v.

TEMPUR-PEDIC, INTERNATIONAL INC.;

TEMPUR-PEDIC SALES, INC.; TEMPUR-

PEDIC NORTH AMERICA LLC; OPTIMA

HEALTHCARE, INC.; and APEX HEALTH

CARE MANUFACTURING, INC.,

                Defendants.

**Civil Action No. 09-11550-GAO**

(Consolidated with Civil Action

 No. 09-10293-WGY)

## <u>DECLARATION OF GLEN STEVICK, PH.D IN OPPOSITION TO MOTION FOR</u>

## <u>SUMMARY JUDGMENT</u>

I, Glen Stevick, Ph.D., declare as follows:

## I.     BACKGROUND

1.  I have been retained by Ruoey Lung Enterprise Corporation and Lung-Tan Shih (collectively "Ruoey Lung") to provide my opinions related to Case Nos. 09-11550-GAO and 09-10293-WGY in the United States District Court for the District of Massachusetts. If called, I am prepared to testify in deposition and/or at trial regarding the subject matters set forth in this declaration.

2.  I understand that U.S. Patent No. 7,448,100 entitled "Motorized Bed That Is Movably Closer To The Wall" (the '100 Patent) listing Lung-Tan Shih as the inventor is the patent-in-suit in this litigation.  I have attached a true and correct copy of the '100 Patent as Exhibit A.

3.  I understand that the '100 Patent is assigned to Ruoey Lung Corporation.

4.  I understand that Ruoey Lung Corporation has asserted Claims 1-16 and 18 of the '100 Patent against certain products from the various parties.

## II.    QUALIFICATIONS

5.  I am a Professional Mechanical engineer by training and education.  I received a B.S. in Mechanical Engineering from Michigan Technological University in 1980, and a Masters and Ph.D. in Mechanical Engineering from the University of California, Berkeley in 1981 and 1993, respectively.

6.  I am a registered Mechanical Engineer in California, Wisconsin and Nevada and a member of the American Society of Mechanical Engineers.  I worked for Chevron from 1981 to 1989 as a project engineer and consultant on various aspects of design,

construction management of oil/water separation plants and gas recovery plants and provided technical consultation in the areas of failure analysis, design, redesign of compressor and turbine components, and processing equipment. I also provided advice on avoiding structural vibrations and calculating crack growth rates for offshore platforms in the North Sea.

7.  In addition, I have taught mechanical engineering courses at U.C. Berkeley, serving as an instructor for the department's senior design course, "Mechanical Engineering Design," and have conducted various lectures on mechanical engineering topics.  Currently, I serve as a mechanical engineering consultant at Berkeley Engineering And Research, Inc. (BEAR), specializing in Failure Analysis and Design of Dynamic Structures, Fluid Systems, Industrial Equipment and Consumer Products, including: mechanical and electrical systems; compressors, turbines and reciprocating engines; automobile, truck, railcar and aircraft components; pressure vessels, heat exchangers, piping and valves.

8.  I also provide analytical and numerical analysis of fluid systems, fire causation and spread, structural dynamics, electronic control systems, material behavior and heat transfer, specializing in structure/fluid interaction.

9.  I have assisted in the design of articulating hospital beds for burn victims and assessed the failure of hospital operating beds.

10. I am an author of numerous mechanical engineering publications and reports listed in my CV (Exhibit B), as well as the co-inventor of issued U.S. patents No. 6,119,461, "Thermal-Electric Container," and No. 7,620,209, "Method and Apparatus for Dynamic Space-Time Imaging System," and an inventor on other pending patent applications.

11. I am also a member of the American Society of Mechanical Engineers Piping Code Committee, Mechanical Design Committee.

12. A more detailed account of my work experience and other qualifications is given in my Curriculum Vitae attached as Exhibit A to this Report.

### III.  COMPENSATION

13. My company is being compensated at a rate of $375 per hour for preparation of this report.  My compensation is not contingent upon the outcome of this litigation.

### IV.  SCOPE OF THIS DECLARATION

14. I have been asked to provide my opinion with respect to the motion for partial summary judgment filed by Ascion, LLC, Martin Rawls-Meehan, Tempur-Pedic, International, Inc., Tempur-Pedic Sales, Inc., Tempur-Pedic North America LLC, Optima Healthcare, Inc., and Apex Health Care Manufacturing, Inc. (collectively "Ascion") with respect to RL's claims that these various moving parties infringe one or more claims of U.S. Patent No. 7,448,100 (the "'100 patent").  Specifically, I have been asked to provide my opinion with respect to Ascion's claims that the accused adjustable beds (the "Accused Products") do not infringe the asserted claims of the '100 patent and that the asserted claims of that patent are invalid.

15. In connection with forming the opinions expressed in this declaration, I have reviewed the following materials, as well as the other materials referenced in this affidavit:

- '100 Patent and its file history

- The summary judgment motion and supporting papers and exhibits filed by Ascion.

## V.    A PERSON OF ORDINARY SKILL IN THE ART

16. It is my opinion that a person of ordinary skill in the art in 2005 would need a minimum of a Bachelor of Science degree in Mechanical Engineering and at least one year of experience in mechanical design and manufacturing.

## VI.    ASCION'S CLAIMS OF NON-INFRINGEMENT

17. I have reviewed Ascion's motion for summary judgment and the supporting papers.  I have also reviewed this Court's Claim Construction Order and the transcript of the hearing with respect to claim construction.

18. I will address first Ascion's claim that the Accused Products do not infringe (i.e. are not covered by) the claims of the '100 Patent.

19. In its summary judgment motion, Ascion takes the position that the Accused Products do not infringe for three reasons: (1) the Accused Products' "cushion" is not "mounted" to the "linking frame," the "first support frame" and the "second support frame" and that the "cushion" does not "move therewith" these "frame" elements; (2) the Accused Products single stabilizer bar does not infringe the "two first links" limitation of the '100 Patent under the Doctrine of Equivalents; and (3) the Accused Products do not have a "resting bar rested on the cushion."   I will address each of these arguments in turn.

20. I note that Ascion has not submitted any expert testimony to support its non-infringement arguments.  I will therefore rely on the support it provides for these arguments in its memorandum of law and the testimony of non-expert witnesses.

**THE ACCUSED PRODUCTS HAVE A CUSHION MOUNTED TO THE FRAME THAT MOVES THEREWITH**

21. I observe that, in its memorandum, Ascion consistently identifies the separate thick mattress [as depicted in the picture on page 16 of its memorandum] as the "cushion" referred to in the claims.  Ascion does not explain how it came to that conclusion (and there is no expert testimony supporting this position).   I believe, however, based on a reading of the patent and the Court's Claim Construction opinion, that this position is fundamentally incorrect and contrary to both the patent itself and its construction by the Court.

22. As the Court held in the Claim Construction Order, "[e]ach independent claim describes a 'cushion' that is mounted so as to move with the 'support frames' as they are adjusted and elevated to permit the user to sit up with his legs supported. '100 Patent 4:39-42." Although the Court noted that "[a]s used in the '100 Patent, the term 'cushion' probably needs no construction" the court held that "[t]o settle the argument, however, its will be construed to mean a pliable mattress cushion.'"  Claim Construction Order at 5.

23. Although, in its memorandum, Ascion consistently replaces the word "cushion" with "mattress" when discussing the independent claims, the term "mattress" is never used in any of the independent or dependent claims.  Indeed, the term "mattress" does not even appear in the patent, either in the claims or in the specification.  It is my opinion that the item that Ascion identifies as a "mattress" is not the "cushion" as described in the patent.

24. In my opinion, the "cushion" described in the asserted claims is the wooden foundation
for each of the four movable sections of the bed and their foam covering, both on the top
and on the sides.  These cushions are depicted in the following picture[1]:



Tempur product purchased by RL.

25. The basis for my opinion that the wooden foundation plus the foam is the claimed
"cushion" is the patent itself.  The patent identifies the "cushion" as the item designated
by the number "60" in the patent's figures.  As seen in Figs. 5, 6 and 7, reproduced
below, the "cushion" designated by the number "60" is not the mattress, as Ascion refers
to it, but rather, the rectangular structure on which the mattress rests. It also satisfies the
Court's definition of "cushion" as a "pliable mattress cushion" because, as shown in the
picture below the foundation/foam combination is clearly "pliable" in that the cushion
"plies" between its four sections to allow the bed to adjust.  The analysis of whether the
Accused Products are covered by the asserted claims of the '100 Patent must proceed

---

[1] All of the photographs of Ascion's adjustable beds contained in this affidavit were taken and
supplied to me by Franklin Gibbs, RL's counsel and are attached to his accompanying affidavit.

with this designation of which portion of the Accused Products represents the "cushion"

in mind.



Exposed side view showing
pliable foam bending at the joint
between wood foundations



FIG. 5



FIG. 6



FIG. 7

26. It is my opinion that the foundation/foam "cushion" is "mounted" on the various "frames" of the accused products Although Ascion argues that this element is not satisfied because the "mattresses of the accused beds are not mounted to anything," as noted above, this argument is faulty because of Ascion's incorrect designation of the thick mattress as the claimed "cushion." The question actually is whether the cushion of the Accused Products is "mounted" to the "frame" of the bed. In my opinion, it is.

27. The Court defined the term "mounted" as follows: "[an] element may be said to be 'mounted' if it is 'attached or affixed to another element either directly or by means of a device or structure that facilitates or accomplishes the attachment." Claim Construction Order at 6. As shown in the pictures below, each section of the wooden foundation is

attached directly to the frame of the accused products.  This, in my opinion, each section

of the "cushion" of the Accused Products is "mounted" to the "frame."





Mounts to lift frame





First portion

Mounts to second
support frame

Second portion